SPECIAL BANK COMMISSIONERS *vs.* FRANKLIN INSTITUTION
FOR SAVINGS.

The accounts of a receiver of an insolvent savings bank under Gen. Stat. R. I. cap. 140, were during the course of his receivership submitted to the court and referred to a master.
On exceptions to the master's report: —
*Held*, that although the receiver, unless cited by the court, was not obliged by the statute to account until the completion of his work, yet that he was to be commended rather than blamed for making an earlier report.
*Held*, further, that the receiver might properly be allowed compensation from time to time during his receivership.
*Held*, further, that the amount of compensation was to be fixed by considering the responsibility assumed, the skill and labor expended, and the rate of pay usually allowed for similar work; and was not to be determined by a percentage on collections.
The accounts contained a charge of $50, given to policemen for keeping order during dividend payments. It appearing that this sum was a gratuity: —
*Held*, that the charge could not be allowed.
The receiver before his appointment had been a broker, and during his receivership was employed as a broker by several of the mortgage debtors of the bank to raise money for the discharge of their indebtedness: —
*Held*, that for such services he was entitled to charge and retain his commissions.

EXCEPTIONS to the report of a master in chancery to whom was referred the accounts of the receiver of the Franklin Institution for Savings.

*July* 7, 1877. DURFEE, C. J. Winthrop De Wolf was appointed receiver of the Franklin Institution for Savings on the 11th day of August, 1874. On the 21st of October, 1876, he

rendered an account to this court covering the first year of his receivership. The account was referred to Samuel W. Peckham as master in chancery, to examine and report whether the same was a just and true account, and what amount ought to be allowed the receiver for his services during the time covered by it. The master made report on the 6th of February, 1877. Exceptions to the report have been filed by both the receiver and the depositors. The cause is now before us upon those exceptions.

The first exception taken by the receiver is to the disallowance of a charge of $50.00, paid for policemen for keeping order during the payment of the receiver's first dividend to the depositors. The master reports that this payment was gratuitous, and there is nothing in the testimony reported which would warrant our finding otherwise. The master disallowed the charge, upon the ground " that a trustee has no right to make a present, out of the trust funds, without the consent of the beneficiaries, however small the amount, and however deserving the object of his bounty may be. The decision is entirely correct. The first exception is therefore overruled.

The receiver has excepted, secondly, because the master has allowed him only $7,500 for his services, and disallowed a charge of $8,500 received by the receiver on account thereof. The depositors, on the other hand, have excepted to the allowance as too large and as prematurely made. It is contended in behalf of the depositors that the receiver is not entitled to any compensation until he has fully discharged his duties, and that it is out of order for him to render an account before completing them.

We do not think that this is a just view. It is true there is nothing in the statute[1] which makes it obligatory upon a receiver to render an account of his receivership before he has completed or is prepared to complete his duties, unless he is sooner cited to account by the court. But because this is so, it does not follow that a voluntary account earlier rendered is improper. Executors and guardians are expected under the statute to render annual accounts. And if a receiver chooses to render similar accounts we think he is to be commended rather than blamed. The court need not act upon them at once, if it thinks it inadvisable

[1] Gen. Stat. R. I. cap. 140.

to do so.   We also think it is not improper to allow the receiver compensation from time to time before the close of his receivership.   The duties are sometimes very onerous and may be protracted for years.   They may interrupt, either wholly or in part, other avocations from which an income is derived.   It would be unreasonable to expect the receiver to wait until the end of his service before receiving any compensation.   We pass to the question whether the allowance is too small, as claimed by the receiver, or is too large, as claimed by the depositors.

It appears that when the receiver entered upon his duties the assets of the bank amounted to $2,783,590.30, consisting principally in loans on mortgages, but also in loans on collaterals on call, on discounted paper, and in stock, bonds, and deposits.   Of this amount the receiver collected or reduced to cash, during the year, the sum of $1,554,148.83, and disbursed to the depositors, in dividends, the sum of $1,406,515.31.   The master reports that, in determining the compensation of the receiver, he has been influenced by a consideration of the great responsibilty assumed by him in taking charge of the assets of the bank, and in reducing them to cash ; in selling stocks and bonds at the right time, and in having no board of trustees to advise him ; and also, by the consideration that the stocks, bonds, and mortgages appear to have been judiciously reduced to cash, and the loans collected with very little if any loss ; that the cash funds, as they accumulated, have been so managed as to earn more than ordinary interest without loss, and that during the time covered by the account more than half the assets of the bank have been collected and paid out.   On the other hand, the master says he considered the facilities and assistance which the receiver had in his work, and the moderate rates of compensation which are usually paid to treasurers of savings banks, — the highest salary paid in the city of Providence being $6,000.00 and the salary of the treasurer of this bank, for the year previous to the time covered by the receiver's account, being only $2,500.00. . In other words, the master has considered, in fixing the receiver's compensation, the responsibility assumed, the skill and labor expended, and the rates usually paid for somewhat similar services.   The receiver asked him to allow a percentage of two and a half per cent. on his collections.   This was of course entirely out of the question.

The statute allows a "reasonable compensation," [1] and a reasonable compensation can seldom or never be determined by a percentage. We think the master's estimate rests upon the proper ground. We think his estimate is large rather than small; but he appears to have formed it after careful hearing and deliberation, and it ought not to be modified unless it is quite plainly erroneous. This it is not. The exceptions to this part of the report are therefore overruled. But, in order that there may be no misapprehension, we will say further that the allowance for this year can be no precedent for any subsequent year; but in proportion as the receiver's responsibility is lightened, and the degree of skill and labor required of him is diminished, so continually the rate of compensation must decrease.

The receiver thirdly excepts, because the master requires him to account to the bank for commissions earned by him in procuring loans for the debtors of the bank. The receiver had been in the business of a broker before his appointment. Several of the mortgage debtors of the bank, when called upon to repay their loans, found it necessary to procure new loans elsewhere for the purpose, and employed the receiver in procuring the loans for them. In some cases the debtor proposed this to the receiver, and in others the receiver proposed it to the debtor. The master thinks that the receiver, having had the opportunity of making this profit by reason of his receivership, should account for it to the bank.

The rule in respect of trustees is doubtless very strict and ought to be scrupulously enforced. It forbids the trustee's making any personal profit out of his office, or out of the trust or trust estate. Ordinarily, also, it will not permit a trustee to assume a position or engage in a business which will give him an interest adverse to the interest of his *cestuis que trust.* In the case at bar the master goes a step beyond this, and requires the receiver to account for a profit which has not accrued to him as the reward of any act done, or omitted to be done, by him as receiver, but simply by reason of the opportunity which his being receiver has given him. The profit was not made out of his office or out of the trust or trust estate. Neither can we see that

---

[1] Gen. Stat. R. I. cap. 140, § 46.

in making it the receiver has put himself in any adverse relation to the bank or to his duty as receiver. It was his duty as receiver to collect the debts of the bank as rapidly as possible; and therefore helping the debtors procure the means of payment was rather a furtherance than an obstruction of the duty. It is intimated that commissions were exacted by the receiver as a condition for transferring the mortgages. If this was so it was inconsistent with his duty. But the master does not find it was so. He thinks the receiver acted honestly. There is nothing to show that the pursuit of this profit ever led him to neglect his official duty. We therefore think the profit was legitimate, and that this exception must be sustained.

The depositors also except, because the master has allowed certain charges for expenditures. We shall not consider these exceptions in detail, but, seeing no reason for revising the master's decision, we overrule them.

The master's report will therefore be confirmed, except in so far as it is to be modified in the matter of the brokerage on commissions.

*Charles P. Robinson*, for commissioners.
*Charles Tracy & George M. Carpenter, Jr.*, for the receiver.
*Charles Hart*, for Franklin Institution.